UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO.

SECURITIES AND EXCHANGE COMMISSION,

        **Plaintiff,**

v.

**DANIEL MOSER,**

        **Defendant.**

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff U.S. Securities and Exchange Commission alleges as follows:

### I. Introduction

1. This case concerns a multi-year, multi-faceted accounting fraud orchestrated by senior executives of FTE Networks, Inc. ("FTE" or "the Company"), a Naples-based, publicly traded company that provided networking infrastructure to the technology and telecommunications industries. Michael Palleschi, FTE's Chief Executive Officer, David Lethem, FTE's Chief Financial Officer, and Anthony Sirotka, FTE's Chief Administrative Officer and President, engaged in a scheme to fraudulently inflate FTE's revenues and paint a false picture of the Company's finances.

2. From April 2017 until November 2018, Moser, as FTE's controller, worked with Palleschi, Lethem, and Sirotka to essentially invent

approximately $12.5 million of revenue and related accounts receivable from purportedly completed construction projects that had not yet been billed and from contracts for projects that purportedly had been completed and billed but not yet paid. In fact, FTE had not performed the underlying work, and the revenue was fictitious.

3. Among other things, Moser participated in the fraud through the following acts:

　　a. On or about May 23, 2017, Moser sent FTE's auditor a spreadsheet falsely representing that FTE had total unbilled revenue from a large customer of approximately $4.4 million as of the end of the first quarter of 2017;

　　b. On or about August 21, 2017, Moser sent the auditor a spreadsheet falsely representing that FTE had total unbilled revenue from the customer of approximately $10,077,000 as of the end of the second quarter of 2017;

　　c. In April 2018, Moser made an entry in FTE's books and records of approximately $22,000 to create the appearance that the new unbilled revenue of $10,054,428 was different from the previous unbilled revenue of $10,077,000; and

　　d. On or about April 14, 2018, Moser gave the auditor spreadsheets and other documents that falsely supported the new total of $10,054,428

in unbilled revenue.

4. By late 2018, the scheme and other fraudulent actions by Palleschi and Lethem came to light when Moser provided information to FTE's only independent director about the true nature of FTE's finances. FTE launched an internal investigation in March 2019.

5. The investigation ultimately led to FTE in May 2020 restating various quarterly and annual financial statements for 2016, 2017, and 2018. The restated financial statements showed FTE had overstated its revenues in some quarterly and annual periods in 2017 and 2018 by as much as 108 percent.

6. By engaging in the conduct described herein, Moser directly violated or is liable for aiding and abetting numerous anti-fraud, accounting, and books-and-records provisions of the federal securities laws as described in more detail below. The Commission seeks injunctive relief, a civil penalty, and an officer-and-director bar against Moser.

## II.  Defendants and Related Entity

7. Moser is a resident of Florida.  From approximately April 2017 until May 2019, Moser was FTE's controller and reported to Lethem.  He has never held any securities licenses and has no known disciplinary history.  He is not licensed as a CPA.

8. Sirotka, 55, is a resident of New York, New York. At various times,

Sirotka served as FTE's Chief Business Development Officer, FTE's Chief Administrative Officer and President, and interim CEO. FTE later placed him on administrative leave because of the conduct described in this Complaint, and Sirotka resigned from FTE on October 2, 2019.

9. Palleschi, 45, is a resident of Naples, Florida. Palleschi was FTE's CEO and Chairman of the Board from January 2014 until January 19, 2019, when FTE placed him on unpaid leave. On May 11, 2019, Palleschi resigned from his positions at FTE.

10. Lethem, 62, is a resident of Fort Myers, Florida. During the events alleged in this Complaint, Lethem was FTE's CFO and reported to Palleschi. He resigned from FTE on March 11, 2019.

11. FTE is a Nevada corporation currently headquartered in New York, New York and previously headquartered in Naples, Florida. FTE's common stock was registered with the Commission pursuant to Section 12(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78l(b)] and traded on the New York Stock Exchange under the ticker symbol FTNW from December 14, 2017 until December 17, 2019. Prior to that, FTE's common stock was registered with the Commission pursuant to Section 12(g) of the Exchange Act [15 U.S.C. § 78l(g)] and traded on OTC Pink as FTNW. From September 12, 2014 until May 16, 2015, the Commission revoked the registration of FTE's shares pursuant to Section 12(j) of the Exchange Act [15

4

U.S.C. § 78l(j)] for failure to file periodic reports with the Commission for more than two years. Currently, FTE's common stock is not publicly traded on any exchange nor quoted on OTC Pink. However, its common stock remains registered pursuant to Section 12(g) of the Exchange Act.

### III. Jurisdiction and Venue

12. This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d) and 22(a) of the Securities Act of 1933 [15 U.S.C. §§ 77t(b), 77t(d) and 77v(a)] ("Securities Act"), and Sections 21(d), 21(e) and 27(a) of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e) and 78aa(a)].

13. This Court has personal jurisdiction over Moser and venue in this District is proper under Section 22 of the Securities Act and Section 27 of the Exchange Act because Moser lived in Florida and worked at FTE's Florida headquarters during the events in question.

14. Moser, directly and indirectly, made use of means or instruments of transportation or communication in interstate commerce, or of the mails, or of any facility of a national securities exchange in connection with the acts, practices, and courses of business alleged herein.

### IV. Facts

*A. Background*

15. The federal securities laws required FTE, as a registered company, to file periodic reports with the Commission, including annual (Forms 10-K)

and quarterly (Forms 10-Q) reports. FTE was required, among other things, to include financial statements in its quarterly and annual reports that accurately and fairly reflected FTE's financial condition. Those financial statements had to comply with GAAP, also known as the Accounting Standards Codification ("ASC"). The Company's annual financial statements also had to be audited. Once filed, FTE's periodic reports and accompanying financial statements became available to the investing public.

16. Moser knew FTE filed financial statements in its quarterly and annual reports. He also knew FTE's financial statements needed to be truthful, accurate, and prepared in accordance with GAAP.

### B. The Fraudulent Revenue and Receivables Scheme

17. From early 2016 through late 2018, FTE recognized approximately $12.5 million of revenue and related accounts receivable from purportedly completed construction projects for which the Company had not yet billed ("Unbilled Work") and from contracts for projects that the Company allegedly had completed and billed for, but which had not yet been paid ("Receivables"). In fact, FTE had not performed the claimed work, and the revenue and receivables were wholly fictitious.

18. Of the $12.5 million, $10 million was for the Unbilled Work, which FTE began to recognize in 2016 to boost its poor performance. For the year ended December 31, 2016, FTE's recognition of $5.8 million of the Unbilled

Work in its financial statements resulted in the Company overstating its revenue by 108 percent and its accounts receivable by 477 percent.

19.     Throughout 2017 and 2018, with Moser's participation, FTE continued to add more fictitious revenue to the Unbilled Work balance, entirely for purported work done for one particular customer ("Customer A"). In 2017, FTE added another $4.2 million in Unbilled Work. Palleschi and Lethem did this even though Customer A had informed FTE in early 2017 that it would no longer hire FTE to do lucrative construction projects.

20.     At the same time, FTE also improperly recognized an additional $2.5 million in Receivables, predominantly comprised of construction projects for Customer A. This revenue was also fictitious. After Lethem placed the Receivables on FTE's books, Moser reversed the revenue because it was completely unsupported—only to have Lethem overrule him and order the revenue placed back on FTE's books.

21.     During FTE's periodic reviews and year-end audits, FTE's auditor repeatedly questioned the validity of the Unbilled Work and the Receivables. In response, Moser, along with Palleschi, Lethem, and Sirotka, provided the auditor with numerous false documents and explanations to justify the fraudulently recognized revenue. Among other things, Moser, beginning in early 2017, provided FTE's auditor with spreadsheets that falsely represented support for the $5.8 million in Unbilled Work FTE recognized for its periodic

7

reports in 2017.

22. By FTE's 2017 annual audit, the Unbilled Work balance had grown to approximately $10 million. Internally, Moser voiced concerns about the validity of the Unbilled Work and objected to being involved in providing the materials to the auditor to justify it.

23. Notwithstanding his concerns, Moser recorded an improper and unsupported journal entry to make it appear the Unbilled Work was legitimate, and provided FTE's auditor with fictitious support and explanations to support the Unbilled Work.

24. As for the Receivables, Moser complied with Lethem's directive to place the revenue back on FTE's books despite knowing it was unsupported, and also provided FTE's auditor with a false explanation about its validity.

### C. FTE's Restatement

25. In May 2020, following its internal investigation, FTE filed its Form 10-K for the year ended December 31, 2018 that restated financial statements for the yearly and quarterly periods for 2016, 2017, and 2018 (the "Restatement").

26. As a result of the revenue transactions described in this Complaint, the Restatement reduced revenue and accounts receivable for the year ended December 31, 2016 by $5.8 million, representing reductions of 47 percent and 83 percent, respectively, from originally reported amounts.

Additionally, as a result of the revenue transactions for the year ended December 31, 2017 and the quarterly periods ended March 31, June 30 and September 30, 2018, accounts receivable were reduced by between 16 percent and 54 percent from originally reported amounts.

## V.  Claims For Relief

### COUNT I

### Violations of Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5(a)

27. The Commission realleges Paragraphs 1 through 26 and incorporates them by reference herein.

28. From April 2017 through November 2018, Moser, in connection with the purchase and sale of securities, by use of the means or instrumentalities of interstate commerce, or of the mails, or of any facility of a national securities exchange, directly or indirectly, knowingly or severely recklessly, used and employed devices, schemes and artifices to defraud.

29. By reason of the foregoing, Moser violated, and, unless enjoined, is reasonably likely to continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(a) [17 CFR § 240.10b-5(a)] thereunder.

### COUNT II

### Aiding and Abetting Violations of Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5(b)

30. The Commission realleges Paragraphs 1 through 26 and

incorporates them by reference herein.

31. From April 2017 through November 2018, Palleschi, and Lethem, in connection with the purchase and sale of securities, by use of the means or instrumentalities of interstate commerce, or of the mails, or of any facility of a national securities exchange, directly or indirectly and knowingly or severely recklessly made untrue statements of material fact and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

32. Moser knowingly or recklessly provided substantial assistance to Palleschi and Lethem in their violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(b) [17 CFR § 240.10b-5(b)] thereunder.

33. By reason of the foregoing, Moser, directly or indirectly violated, and, unless enjoined, is reasonably likely to continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(b) [17 CFR § 240.10b5(b)] thereunder.

## COUNT III

### Violations of Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5(c)

34. The Commission realleges Paragraphs 1 through 26 and incorporates them by reference herein.

35. From April 2017 through November 2018, Moser, in connection

with the purchase and sale of securities, by use of the means or instrumentalities of interstate commerce, or of the mails, or of any facility of a national securities exchange, directly or indirectly, knowingly or severely recklessly, engaged in acts, practices and courses of business which operated as a fraud and deceit upon any person.

36. By reason of the foregoing, Moser violated, and, unless enjoined, is reasonably likely to continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(c) [17 CFR § 240.10b-5(c)] thereunder.

## COUNT IV

### Violations of Section 17(a)(1) of the Securities Act

37. The Commission realleges Paragraphs 1 through 26 and incorporates them by reference herein.

38. From April 2017 through November 2018, Moser, in the offer and sale of securities, by the use of means or instruments of transportation or communication in interstate commerce, or by use of the mails, directly or indirectly, knowingly or severely recklessly, employed devices, schemes and artifices to defraud.

39. By reason of the foregoing, Moser, and, unless enjoined, is reasonably likely to continue to violate, Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

## COUNT V

### Violations of Section 17(a)(3) of the Securities Act

40. The Commission realleges Paragraphs 1 through 26 and incorporates them by reference herein.

41. From April 2017 through November 2018, Moser, in the offer and sale of securities, by the use of means or instruments of transportation or communication in interstate commerce, or by use of the mails, directly or indirectly, negligently engaged in transactions, practices, and courses of business that operated as a fraud or deceit upon purchasers of securities.

42. By reason of the foregoing, Moser violated, and, unless enjoined, is reasonably likely to continue to violate, Section 17(a)(3) of the Securities Act [15 U.S.C. § 77q(a)(3)].

## COUNT VI

### Aiding and Abetting FTE's Violations of Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1, 13a-11 and 13a-13

43. The Commission realleges Paragraphs 1 through 26 and incorporates them by reference.

44. From early 2016 through January 2019, FTE failed to file, in accordance with such rules and regulations as the Commission prescribes as necessary or appropriate, such information and documents as the Commission requires to keep reasonably current the information and documents required

to be included in or filed with an application or registration statement filed pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l], or such annual, quarterly, or other reports as the Commission prescribes, or failed to include, in addition to the information expressly required to be included in any statement or report filed pursuant to Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] such further material information, if any, as may have been necessary to make the required statements, in the light of the circumstances under which they were made, not misleading.

45. Moser knowingly or recklessly provided substantial assistance to FTE in its violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20 [17 CFR § 240.12b-20], 13a-1 [17 CFR § 240.13a-1], 13a-11 [17 CFR § 240.13a-11] and 13a-13 [17 CFR § 240.13a-13] thereunder.

46. By reason of the foregoing, Moser aided and abetted FTE's violations of the foregoing statutes and rules, and, unless enjoined, is reasonably likely to continue to aid and abet violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20 [17 CFR § 240.12b-20], 13a-1 [17 CFR § 240.13a-1], 13a-11 [17 CFR § 240.13a-11] and 13a-13 [17 CFR § 240.13a-13] thereunder.

## COUNT VII

### Aiding and Abetting FTE's Violations of Section 13(b)(2)(A) of the Exchange Act

47. The Commission realleges Paragraphs 1 through 26 and incorporates them by reference.

48. From early 2016 through January 2019, FTE failed to make and keep books, records and accounts that in reasonable detail accurately and fairly reflected its transactions and disposition of assets.

49. Moser knowingly or recklessly provided substantial assistance to FTE in its violations of Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)].

50. By reason of the foregoing, Moser aided and abetted FTE's violations of Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)] and, unless enjoined, is reasonably likely to continue to aid and abet violations of Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)].

## COUNT VIII

### Aiding and Abetting FTE's Violations of Section 13(b)(2)(B) of the Exchange Act

51. The Commission realleges Paragraphs 1 through 26 and incorporates them by reference.

52. From early 2016 through January 2019, FTE failed to devise and maintain a system of internal accounting controls sufficient to provide

reasonable assurance that: transactions were executed in accordance with management's general or specific authorization; transactions were recorded as necessary to permit preparation of financial statements in conformity with GAAP or any other criteria applicable to such statements, and to maintain accountability for assets; access to assets were permitted only in accordance with management's general or specific authorization; and the recorded accountability for assets was compared with the existing assets at reasonable intervals and appropriate action was taken with respect to any differences.

53. Moser knowingly or recklessly provided substantial assistance to FTE in its violations of Section 13(b)(2)(B) of the Exchange Act [15 U.S.C. § 78m(b)(2)(B)].

54. By reason of the foregoing, Moser aided and abetted FTE's violations of Section 13(b)(2)(B) of the Exchange Act [15 U.S.C. § 78m(b)(2)(B)] and, unless enjoined, is reasonably likely to continue to aid and abet violations of Section 13(b)(2)(B) of the Exchange Act [15 U.S.C. § 78m(b)(2)(B)].

## COUNT IX

**Violations of Section 13(b)(5) and Rule 13b2-1 of the Exchange Act**

55. The Commission realleges Paragraphs 1 through 26 and incorporates them by reference.

56. From April 2017 through November 2018, Moser circumvented and/or failed to implement a system of internal accounting controls and

15

knowingly falsified or caused to be falsified FTE's books, records and accounts as those terms are used in Section 13(b)(2) of the Exchange Act [15 U.S.C. § 78m(b)(2)].

57. By reason of the foregoing, Moser violated, and, unless enjoined, is reasonably likely to continue to violate, Section 13(b)(5) of the Exchange Act [15 U.S.C. § 78m(b)(5)] and Rule 13b2-1 [17 CFR § 240.13b2-1] thereunder.

## COUNT X

## Violations of Rule 13b2-2 of the Exchange Act

58. The Commission realleges Paragraphs 1 through 26 and incorporates them by reference.

59. From April 2017 through November 2018, Moser, at the direction of Palleschi and Lethem, directly or indirectly, made and caused to be made, materially false and misleading statements, and omitted to state, and caused others to omit to state, material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading, to an accountant in connection with audits and reviews of financial statements and the preparation and filing of documents and reports required to be filed with the Commission.

60. By reason of the foregoing, Moser violated, and, unless enjoined, is reasonably likely to continue to violate, Exchange Act Rule 13b2-2 [17 CFR § 240.13b2-2].

## VI. Relief Requested

**WHEREFORE**, the Commission respectfully requests the Court find that the Defendant committed the violations of the federal securities laws alleged in this Complaint and:

## A. Permanent Injunction

Issue a Permanent Injunction, enjoining Moser, his agents, servants, employees, attorneys, and representatives, and all persons in active concert or participation with them, and each of them, from violating the provisions of the securities laws as alleged against Moser in this Complaint.

## B. Civil Penalty

Issue an Order directing Moser to pay a civil money penalty pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d).

## C. Officer And Director Bar

Issue an Order barring Moser from serving as an officer or director of any public company pursuant to Section 21(d) of the Exchange Act and Section 305(b)(5) of the Sarbanes-Oxley Act.

## D. Further Relief

Granting such other and further relief as this Court may deem just and appropriate.

## E. Retention Of Jurisdiction

Further, the Commission respectfully requests that the Court retain jurisdiction over this action and over the Defendant in order to implement and carry out the terms of all orders and decrees that may hereby be entered, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

## VIII. Jury Trial Demand

The Commission hereby demands a trial by jury on any and all issues in this action so triable.

Respectfully submitted,

September 30, 2022

By: /s Robert K. Levenson
Robert K. Levenson, Esq.
Senior Trial Counsel
Florida Bar No. 0089771
Direct Dial: (305) 982-6341
Email: levensonr@sec.gov

Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
801 Brickell Avenue, Suite 1950
Miami, Florida 33131